UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                     :
  RICHARD MASSIE,                         :
                            Plaintiff,     :
                                      :         11-CV-9549 (JPO)
                -v-                  :
                                      :       <u>OPINION AND ORDER</u>
  METROPOLITAN MUSEUM OF ART,   :
  ET. AL.,                             :
                               Defendants. :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Richard Massie brings this action against his former employer, The Metropolitan

Museum of Art ("The Met"); his former union, District Council 37 Local 1503 ("DC 37"); two

hospitals at which he received medical care, Lennox Hill Hospital and Westchester Hospital

("the Hospitals," collectively); and several of his former co-workers and supervisors.  He alleges

violations of 28 U.S.C. §§ 1983 and 1981; the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621-634; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

12112-12117; the National Labor Relations Act ("NLRA"), 29 U.S.C.A § 160, *et. seq.*; and the

New York State and New York City Human Rights Laws ("NYSHL" and "NYCHL,"

respectively), N.Y. Exec. Law §§ 290-97, N.Y. City Admin. Code § 8-101.  Defendants have

moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons that follow, Defendants' motion is granted, but Plaintiff is granted leave to

amend his complaint for the purposes of establishing that his supervisor at the Met was acting

under color of state law when he allegedly made racially derogatory claims about Plaintiff.

I.      **Background**[1]

Plaintiff worked as a security guard at the Met from 1995 until his termination on or about July 30, 2010.  From 2001 to 2002, Plaintiff took a leave of absence which became the subject of an earlier federal lawsuit, as well as several state- and federal-agency complaints.  *See Massie v. Metro. Museum of Art*, No. 06-CV-12905, 2010 WL 3766943 (S.D.N.Y. Sept. 27, 2010).  Plaintiff was represented by DC 37 during a grievance proceeding relating to this leave of absence.  By the third hearing in this proceeding, DC 37 had abandoned its representation.  The grievance process ran its course without DC 37 and Plaintiff subsequently brought suit in federal court.  Some of his claims were dismissed and the rest defeated on summary judgment. *Id.*

Between roughly 2006 and his termination in 2010, Plaintiff was subjected to taunts and harassment by his supervisors and coworkers.  On July 22, 2010, an allegedly embarrassing and private video of Plaintiff was posted by one of his supervisors on YouTube.  Throughout the relevant period, Plaintiff's supervisors were unkind to Plaintiff and sought to falsely accuse him of various kinds of misconduct, which misconduct ultimately resulted in his termination in 2010.

On July 21, 2010, one of Plaintiff's supervisors called him a "real black bastard child." (Dkt. No. 106, First Amended Complaint, at 6.)  The following day—on the same day that the allegedly embarrassing YouTube video was posted—Defendant Ortega told Plaintiff to "kiss [his] ass lick [his] ass . . . ." *Id.*  On the previous Monday, the Museum President "premeditated . . . and probably was the one who originally called [Plaintiff] a[n] FSBB." *Id.* at 5.  Elsewhere in

---

[1] On April 16, 2013, this Court dismissed several of Plaintiff's claims *sua sponte*.  (Dkt. No. 104.)  Plaintiff's factual allegations regarding these complaints will not be mentioned here.  The remaining facts are taken from Plaintiff's First Amended Complaint and are treated as true for purposes of the instant motion.

the complaint, Plaintiff makes clear that "FSBB" stands for "fucking stupid black bastard." *Id.* at 9.

At some point during the relevant period, Plaintiff was treated at Westchester and Lennox Hill hospitals.  The Hospitals revealed sensitive medical information to the Met and others.  This sensitive information contributed to Plaintiff's termination from the Met in 2010.  Plaintiff brought suit against the hospitals in New York State Supreme Court in April of 2012.  He alleged a violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C.A. § 1320d–2; slander; negligence or medical malpractice; misrepresentation; and "intentional harm." (Dkt. No. 156, Defendant Lennox Hill's Memorandum of Law, at 2.)  His claims were dismissed on November 8, 2012.

## II.     Discussion

### A.       Claims against Lennox Hill and Westchester Hospitals

Plaintiff's claims against the Hospitals must be dismissed under the doctrine of *res judicata*, or claim preclusion.  Where a prior decision is rendered by a New York State court, New York's *res judicata* doctrine will apply.  *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982).  Under New York's *res judicata* doctrine, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Sosa v. JP Morgan Chase Bank*, 33 A.D.3d 609, 611 (N.Y. App. Div. 2d Dep't 2006).

All of Plaintiff's instant claims against the Hospitals arise from their alleged disclosure of his private health information.  Therefore, the claims all arise out of the same "transaction," *id.*, between Plaintiff and the Hospitals.  The New York State Supreme Court has entered a final judgment on the merits with respect to Plaintiff's claims.  *See Massie v. Westchester Hospital*, No. 102528/12 (N.Y. Supreme Ct. Nov. 8, 2012).  Therefore they must be dismissed.

### B.   Claims against DC 37

Plaintiff alleges that DC 37 violated its duty of fair representation by terminating its representation during the grievance proceeding.  "[T]he duty of fair representation is implied under the scheme of the National Labor Relations Act . . . ."  *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir. 1997).  The statute of limitations for fair-representation claims is six months.  *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 155 (1983).  The statute runs from the time that the plaintiff knew or should have known of the union's alleged breach of duty.  *See White*, 128 F.3d at 114.

The last date on which Plaintiff and DC 37 interacted is October 4, 2010.  DC 37 claims that because it "did not provide Mr. Massie with any further representation" after that date, he "knew or should have known of the . . . alleged breach of duty by [that date]."  (Dkt. No. 171, DC 37's Memorandum of Law, at 4.)  Plaintiff filed his First Amendment Complaint—the first pleading to name DC 37 as a defendant—on November 15, 2012.

The substance of Plaintiff's claim is that DC 37 breached its duty by failing to continue to represent him during the grievance process.  Thus, his claim accrued when DC 37 ceased to represent him.  By October 4, 2010—at the latest—Plaintiff knew or should have known that DC 37 was ceasing to represent him.  Therefore, October 4, 2010, is the date on which Plaintiff's cause of action arose.  Because he filed his first complaint in this action on December 27, 2011, Plaintiff's action against DC 37 is untimely even if it is considered to relate back to the date on which Plaintiff sued the Met.  His claim against DC 37 must be dismissed.

### D.   Claims against The Met[2]

---

[2] As a preliminary matter, any allegations in Plaintiff's complaint that relate to conduct arising out of his employment relationship with the Met that occurred before November 3, 2006, are barred by *res judicata*.  On that date, Plaintiff sued the Met for employment discrimination and

### 1.    Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  Courts must accept as true all well-pleaded factual allegations in the

complaint, and "draw . . . all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433

F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks omitted).  But mere threadbare

assertions of legal conclusions are not presumed true.  *Iqbal*, 556 U.S. at 678.  Pro se complaints

are read with special solicitude, and are considered to raise the strongest arguments that they

suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006); *Weixel v.

Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002).

### 2.    §§ 1981 and 1983 Claims

Plaintiff alleges that the Met violated his rights under color of law in violation of §§ 1981

and 1983.  These laws apply only to state actors.  *Compare The Civil Rights Cases,* 109 U.S. 3,

11 (1883) ("It is State action of a particular character that is prohibited [by the Fourteenth

Amendment]"), *with Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 (1982) (holding that

the state action requirement of the Fourteenth Amendment and the "under color of state law"

requirement of § 1983 are identical).  Therefore, Plaintiff can prevail only if the Met is a state

actor.

---

violation of several other federal statutes.  *See Massie v. Metro. Museum of Art*, No. 06-CV-
12905, 2010 WL 3766943 (S.D.N.Y. Sept. 27, 2010).

The Met conclusorily asserts that it is "a private employer" and that it cannot, therefore, be a state actor for purposes of § 1983.  (Dkt. No. 73, Met's Memorandum of Law, at 5.)  But it is not impossible for an ostensibly private organization to be a state actor for purposes of § 1983. *E.g.*, *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291 (2001) ("[T]he deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed . . . .").  "The character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies."  *Id.*

A private organization can take on the characteristics of the state in several ways.

> Our cases have identified a host of facts that can bear on [the state action determination]. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the State or its agents. We have treated a nominally private entity as a state actor when it is controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with governmental policies, or when government is entwined in its management or control.

*Id.* at 296 (internal quotation marks and citations omitted).  *See also Sybalski v. Indep. Gr. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008).

For a private non-profit foundation to take on the character of a state actor under the "entwinement" prong, "the decisionmakers [of the organization must be] ostensibly state actors." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 212 (2d Cir. 2009).  There must be "pervasive entwinement" between the private actor and the State.  *E.g.*, *American Atheists, Inc. v. Port Auth. of NY & NJ*, 936 F. Supp. 2d 321, 333 (S.D.N.Y. 2013).  The standard is a flexible one and "'no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.'"  *Forbes v. City of New York*, 05-CIV-7331 (NRB), 2008

WL 3539936 (S.D.N.Y. Aug. 12, 2008) (quoting *Brentwood*, 531 U.S. at 295).  Nonetheless, "a

private entity does not become a state actor . . . merely on the basis of 'the private entity's

creation, funding, licensing, or regulation by the government.'" *Fabrikant v. French*, 691 F.3d

193, 207 (2d Cir. 2012) (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir.

2003)).

While the Met is wrong that it *cannot* be a state actor for § 1983 purposes, Plaintiff has

not pleaded any facts sufficient to raise an inference that the Met's actions were fairly

attributable to the State in this instance.  Therefore, the Plaintiff's complaint must be dismissed

for failure to plead state action.

Nonetheless, the Met has a long and pervasive relationship with the City of New York,

which is unquestionably a state actor for § 1983 purposes.

> That relationship is described in the official 'Procedures Manual for New York
> City's Designated Cultural Institutions,' as 'joint partnerships between the City
> and a group of private citizens.' The Procedures Manual describes that state
> legislation was passed to incorporate [the Met and the Brooklyn Museum],
> authorizing the City to construct the museums facilities and to lease those
> facilities and the City-owned parkland on which they were located to the new
> corporations. The museums, in turn, became responsible for programming the
> facilities and acquiring and exhibiting their collections. The leases contemplate
> that the City will maintain the buildings while the museums oversee the display of
> their collections to the general public.

*Brooklyn Inst. of Arts & Sciences v. City of New York*, 64 F. Supp. 2d 184, 187 (E.D.N.Y. 1999)

(some internal quotation marks omitted).  To the extent that Plaintiff's supervisors were acting in

the capacity of "maintaining the [Met's] buildings," it is at least possible that they may have

been acting under color of state law for purposes of § 1983.  *Id.*

### 3.   Title VII Claims and ADA Claims

Plaintiff alleges several violations of Title VII of the Civil Rights Act.  Title VII carries a

180-day statute of limitations.  42 U.S.C. § 2000e-5(e)(1).  Similarly, Plaintiff alleges that he

was ultimately fired from his security guard position because of a—perhaps mistaken—diagnosis of schizophrenia in violation of the ADA.  ADA claims carry a 300-day statute of limitations. *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).  Plaintiff filed the instant action more than a year after he was terminated—which is the last date that the Plaintiff alleges the Defendant discriminated against him on the basis of his protected disability or race.  Therefore, Plaintiff's ADA claim and his Title VII claims must be dismissed as time-barred.

### 4.      State and City Law Claims

Plaintiff's federal claims have all been dismissed.  This Court declines to exercise supplemental jurisdiction over his remaining state law claims.  *See* 28 U.S.C. § 1367.

## III.      Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted.  Plaintiff is granted leave to file an amended complaint for the purposes of alleging, if he can, that his supervisor at the Met was acting under color of state law when he allegedly made racially derogatory claims about Plaintiff.  The Clerk of Court is directed to close the motions at docket numbers 137, 154, and 170.

Plaintiff must file his amended complaint by August 15, 2014.


SO ORDERED.

Dated: July 8, 2014
      New York, New York

_____
            J. PAUL OETKEN
        United States District Judge

A copy of this Opinion and Order was mailed to the Plaintiff on July 8, 2014 at the following address:

120 Aldrich Street, Apt. 12H
Bronx, NY 10475.