```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
RICHARD MASSIE,                                              :
                                                             :
                              Plaintiff,                     :    11-CV-9549 (JPO)
               -v-                                           :
                                                             :    OPINION AND ORDER
METROPOLITAN MUSEUM OF ART, et al.,                          :
                                                             :
                              Defendants.                    :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

Plaintiff Richard Massie brings this action against his former employer, The Metropolitan Museum of Art, and several of his former co-workers and supervisors there (collectively, the "Met"); his former union, District Council 37 Local 1503 ("DC 37"); and two hospitals at which he received medical care, Lenox Hill Hospital and Westchester Hospital (collectively, the "Hospitals"). He brings his claims under 42 U.S.C. §§ 1981 and 1983; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–12117; the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160 *et seq.*; the New York State Human Rights Law ("NYSHL"), N.Y. Exec. Law §§ 290–97; and the New York City Human Rights Law ("NYCHL"), N.Y. City Admin. Code § 8–101. The Met moves for summary judgment on the claims against it, and Lenox Hill Hospital moves to dismiss the complaint. For the reasons that follow, both motions are granted.

I.    **Background**

The Court assumes familiarity with the factual background of this case, summarized in the Court's decision dated July 8, 2014. (Dkt. No. 200.) There, the Court dismissed Massie's Third Amended Complaint, but granted Massie leave to amend his complaint solely to permit him to plead, for the purpose of his §§ 1981 and 1983 claims against the Met, that his supervisor

1

at the Met was acting under color of state law when he allegedly made racially derogatory claims about Plaintiff.  (*Id.* at 1.)  The Court did not grant Massie leave to amend his complaint with respect to any of his other claims.

Nonetheless, Massie's Fourth Amended Complaint, filed on September 4, 2014, reasserts all of his previously dismissed claims against the same defendants.  (Dkt. No. 204 ("FAC") at 1.) The Met filed an answer on September 22, 2014 (Dkt. No. 211), and moved for summary judgment on all claims on January 21, 2015 (Dkt. No. 218).  Massie submitted several filings in opposition to the motion (Dkt. Nos. 225, 229, 231 & 233), both before and after the Met filed its reply on February 11, 2015 (Dkt. No. 227).

Lenox Hill Hospital filed a motion to dismiss and amend the caption on March 27, 2015. (Dkt. No. 236.)  Massie filed oppositions to that motion on April 10 and May 1, 2015.  (Dkt. Nos. 240 & 248.)

**II.    Legal Standard**

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and there is a genuine issue for trial where, considering the record as a whole, a rational trier of fact could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"It is the movant's burden to show that no genuine factual dispute exists," and the court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor."  *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant meets its burden, the burden shifts to the non-moving party to demonstrate that there is, in fact, a

2

genuine issue for trial. *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). A court cannot "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact" on a motion for summary judgment, but neither can it permit the non-moving party to rely upon "conclusory statements, conjecture, or speculation." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (quoting *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995)) (internal quotation marks omitted). Where a litigant is proceeding *pro se*, the court is to read his or supporting papers "liberally" and read them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### III.     Discussion

#### A.     Sections 1983 and 1981

Massie's §§ 1981 and 1983 claims against the Met are based on the conduct of his supervisors and co-workers while Massie was employed as a security guard there. Specifically, Massie alleges that he endured racial taunts and harassment by other Met employees, and that his supervisors' false accusations of misconduct led to Massie's termination in July 2010. (FAC at 3, 5–8.) The Court previously dismissed these claims because Massie failed to plead facts giving rise to a reasonable inference that the Met acted under color of state law.[1] (Dkt. No. 200, at 5–7.)

There is no genuine dispute of material fact as to whether the Met acted under color of state law. And Massie's §§ 1981 and 1983 claims fail for other reasons.

---

[1] In its previous opinion, the Court erroneously stated that §§ 1981 and 1983 "apply only to state actors." (Dkt. No. 200, at 5.) That is true for § 1983, but not for § 1981. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) ("[Section 1981's] prohibitions apply to private as well as state actors . . . .").

A plaintiff may assert a § 1983 claim for deprivation of a federal right only where the deprivation was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). This requirement is equivalent to the "state action" prerequisite for claims under the Fourteenth Amendment. *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). The wrongdoer need not be directly employed by the state for the court to find that he acted under color of state law, but his conduct must nonetheless be "fairly attributable to the State." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2012) (quoting *West*, 487 U.S. at 54) (internal quotation marks omitted). There must be, in other words, "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Vega v. Fox*, 457 F. Supp. 2d 172, 181 (S.D.N.Y. 2006) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (internal quotation marks omitted). A finding of "state action" is proper "where the state exercises 'coercive power' over, is 'entwined in the management or control' of, or provides 'significant encouragement, either overt or covert' to, a private actor, or where the private actor 'operates as a willful participant in joint activity with the State or its agents,' is 'controlled by an agency of the State,' has been delegated a 'public function' by the state, or is 'entwined with governmental policies.'" *Tancredi*, 316 F.3d at 313 (quoting *Brentwood Acad.*, 531 U.S. at 296) (brackets omitted). Whether an act constitutes state action is a "necessarily fact-bound inquiry," *Brentwood Acad.*, 531 U.S. at 298, and the court properly grants summary judgment where there is no genuine dispute as to whether a defendant's conduct amounts to state action, *see, e.g.*, *Turturro v. Cont'l Airlines*, 334 F. Supp. 2d 383, 397 (S.D.N.Y. 2004); *Harris v. Sec. Co. of 1370 Sixth Ave.*, 94-CV-2599 (JGK), 1996 WL 556927, at *3 (S.D.N.Y. Oct. 1, 1996).

Massie alleges at several points in his complaint that the individual defendants "acted under Color of State Law." (FAC at 8–12, 14, 16, 22, 32 & 39.) He makes the same allegation in filings in opposition to the Met's summary judgment motion. (*See, e.g.*, Dkt. No. 229, at 3–4, 8 & 11.) But his allegation is conclusory: nowhere does he present evidence or facts in support of the conclusion that the relevant conduct of the Met was fairly attributable to the City of New York or any other state actor. There is no genuine dispute of material fact on this issue, and the Court therefore grants the Met's motion for summary judgment on its § 1983 claim.

Massie's §§ 1981 and 1983 claims, whether or not they are construed as claims related to his discharge, fail even absent the above conclusion. Employment discrimination claims under §§ 1981 and 1983 are, like Title VII claims, analyzed under the burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). A plaintiff claiming an alleged discriminatory discharge must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id.* at 492. If the plaintiff does so, the defendant must provide a "legitimate nondiscriminatory reason for the termination." *Id.* If the defendant can establish such a reason, the burden shifts back to the plaintiff to demonstrate that the real reason for the termination was the plaintiff's membership in the protected class. *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks omitted).

Massie's complaint is at times difficult to interpret, but he does appear to allege that the basis for the alleged discrimination was his race, gender, age, and perceived disability

(schizophrenia). (FAC at 3.[2]) His claim of discriminatory discharge fails because, even if he had established a *prima facie* case, the Met has produced evidence of a legitimate nondiscriminatory reason for his termination, a reason that Massie is unable to show is pretextual. The Met has provided sufficient evidence to convince any reasonable juror that Massie was terminated not because of his membership in a protected class, but instead because of two separate incidents in which he cursed at museum patrons. The first took place on June 20, 2010, when "a young female visitor . . . complained to [a security supervisor] that [Massie] had called her a 'bitch.'" (Dkt. No. 220 ("Bloom Decl.") Ex. C; *Id.* Ex. A ("Pl. Dep.") at 47:5–8.) Massie admitted doing so at a disciplinary hearing on July 22, 2010. (Bloom Decl. Ex. C.) Massie was advised in writing that the incident was "very serious" and that "unprofessional behavior" of that kind "can be cause for termination." (*Id.*) He was also given a written warning that "more stringent disciplinary action" would be taken against him if there were "additional problems" in the future. (*Id.*)

The second incident took place on July 20, 2010, when Massie cursed at a visitor who asked him for directions to the exit about ten minutes before the museum closed. (Bloom Decl. Ex. D.) In an e-mail to the museum, the visitor complained that Massie responded "yeah, get the f##k out." (*Id.* (alteration in original).) The visitor captured a video of part of that interaction on his phone and posted it to YouTube. (*Id.* Ex. E.) In his deposition, Massie admitted that he was the guard in the video and that he told the visitor "Get the fuck out" and "You ain't shit." (Pl. Dep. 59:19–22, 62:10–13 & 65:15–17.) Massie also admitted at a disciplinary hearing on July 28, 2010 to making these statements. (Bloom Decl. Ex. F.) Massie's superiors, finding that his

---

[2] Although Massie does not explicitly say whether his disability is real or perceived, he does write that his schizophrenia is a "trumped up illness." (FAC at 3.)

conduct was "completely unprofessional" and served to "discredit[] the Museum," terminated his employment. (*Id.*)

This evidence is more than adequate to meet the Met's burden of showing beyond genuine dispute a legitimate and nondiscriminatory reason for Massie's termination. The Court has reviewed Massie's various filings and there is nothing sufficient to raise a genuine issue of material fact as to whether his termination was in fact motivated by animus towards his membership in a protected class. Summary judgment is accordingly appropriate on Massie's discriminatory discharge claims under §§ 1981 and 1983.

To the extent that Massie also raises a hostile work environment claim, that claim is dismissed as well.[3] "A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (Title VII) (internal quotation marks omitted) (brackets in original); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) ("In analyzing § 1981 claims, we apply the same standards as in Title VII cases.") (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 n.2 (7th Cir. 1999)) (internal quotation marks omitted). A plaintiff need not show that the incidents rendered the work environment "unendurable" or "intolerable," but she must, to survive a motion for summary judgment, show either that a single incident of harassment was "extraordinarily severe" or that a set of incidents was "sufficiently continuous and concerted to have altered the conditions of her working environment." *Whidbee*, 223 F.3d at

---

[3] In his complaint form, Massie purports to bring claims for various kinds of discriminatory conduct, including failure to hire, failure to promote, and retaliation, among others. The Court has reviewed Massie's filings and concludes that they are best read as raising claims for discriminatory discharge and hostile work environment.

69 (internal quotation marks omitted); *Alfano*, 294 F.3d at 373 ("The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. . . . Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."). While incidents that are "few in number" and that occur "over a short period of time" may be insufficient to establish a hostile work environment, *Whidbee*, 223 F.3d at 69 (internal quotation marks omitted), courts are required to "examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Alfano*, 294 F.3d at 374.

Massie cannot genuinely dispute the conclusion that the alleged incidents of discrimination were not sufficiently severe or pervasive to form the basis of a hostile work environment claim. The two relevant alleged incidents of discrimination are both comments by Defendant Jose Ortega, who appears to have been Massie's supervisor at the relevant times. (FAC at 5; Pl. Dep. 71:4–8.) On July 11, 2010, Massie alleges that Ortega called him a "fucking stupid black bastard." (FAC at 5; Dkt. No. 229, at 4.) Then, on July 20, 2010, Massie claims that Ortega referred to him as a "real black bastard child."[4] (Pl. Dep. 125:14–25.) Massie does not present evidence of other incidents of discrimination in the workplace.

These incidents, viewed in the totality of the circumstances, are not sufficient to give rise to a conclusion that Massie's work environment was permeated with discrimination or that the conditions of Massie's employment were thereby altered. The alleged derogatory and racist

---

[4] Massie claims that he heard Ortega make this comment, but that it was not made "[t]o [his] face." (*See* Pl. Dep. 125:3–16.) Even if that is true, the incident may nonetheless be the basis of a hostile work environment claim. As the Second Circuit has explained, "the mere fact that the plaintiff was not present when a racially derogatory comment was made will not render that comment irrelevant to his hostile work environment claim because the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." *Whidbee*, 223 F.3d at 71 (brackets and internal quotation marks omitted).

comments are, while not physically threatening, severe. But, relatively speaking, the incidents were isolated; they did not occur with frequency or over a particularly lengthy period of time. And even if Ortega's comments were offensive and humiliating, as they are alleged to be, Massie has also failed to submit evidence on the motion upon which a reasonable trier of fact could conclude that the incidents "work[ed] a transformation of [his] workplace." *Alfano*, 294 F.3d at 274. The Court accordingly grants the Met's motion for summary judgment on Massie's §§ 1981 and 1983 claims.

### B. All Other Claims

In its opinion dated July 8, 2014, the Court dismissed Massie's claims against the Hospitals and DC 37, and his claims under Title VII, the ADA, the ADEA, the NYSHRL, and the NYCHRL, with prejudice and without leave to amend. (Dkt. No. 200, at 3–4, 7–8.)

The Court dismissed Massie's Title VII and ADA claims (and by implication, his ADEA claim) on the ground that they were time-barred. (Dkt. No. 200, at 7–8.) That decision was in error. In New York, a plaintiff asserting claims under Title VII, the ADEA, and the ADEA must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("SDHR") within 300 days of the alleged discrimination. *Lomako v. New York Inst. of Tech.*, 09-CV-6066 (HB), 2010 WL 1915041, at *4 (S.D.N.Y. May 12, 2010), *aff'd*, 440 F. App'x 1 (2d Cir. 2011); *Salerno v. City Univ. of New York*, 99-CV-11151 (NRB), 2002 WL 31856953, at *1 n.2 (S.D.N.Y. Dec. 19, 2002). Massie filed his charge of discrimination against the Met with the EEOC and SDHR on March 28, 2011. (Bloom Decl. Ex. Z.) The EEOC issued a right-to-sue letter on November 4, 2011 (*id.* Ex. AA), and Massie initiated this action on December 27, 2011 (Dkt. No. 1), within 90 days of the letter. Accordingly, claims based on incidents of alleged discrimination that occurred on or after June 1,

2010—300 days prior to Massie's filing of the charge of discrimination—would not be time-barred.

Even so, the Court grants the Met's motion for summary judgment as to Massie's claims under Title VII, the ADA, the ADEA, the NYSHRL, and the NYCHRL. Massie's Title VII and NYSHRL discharge and hostile work environment claims are analyzed like his § 1981 claims for the same, *see Acosta v. City of New York*, 11-CV-856 (KBF), 2012 WL 1506954, at *4–8 (S.D.N.Y. Apr. 26, 2012), and therefore fail. Massie's ADA and ADEA claims relating to his termination are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 255 (S.D.N.Y. 2009) (ADA); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (ADEA). Because the Court has already concluded that the Met has articulated a legitimate, nondiscriminatory reason for Massie's termination, and because none of Massie's filings raises a genuine issue of material fact as to whether his termination was in fact due to his membership in a protected class, the Court grants summary judgment as to these claims as well.[5]

NYCHRL claims are owed an "independent liberal construction" and are therefore evaluated separately from the above. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (internal quotation marks omitted). But in this case, both the NYSHRL and NYCHRL claims fail because Massie elected to bring these claims before the SDHR. (Bloom Decl. Ex. Y.) Massie is accordingly precluded from asserting them in this Court. *See York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). Once the SDHR dismissed Massie's complaint (Bloom Decl. Ex. Z), his recourse was an appeal to the New York Supreme

---

[5] The Court's erroneous dismissal of Massie's Title VII, ADA, and ADEA causes of action did not prejudice Massie: he had an opportunity in discovery to produce evidence on these claims, which he reasserted in his Fourth Amended Complaint and which had not been dismissed before discovery.

Court, not a new action in federal court. *See York*, 286 F.3d at 127. Summary judgment is therefore granted for Defendants as to Massie's state and city law claims.

## IV. Conclusion

For the foregoing reasons, the Met's motion for summary judgment and Lenox Hill's motion to dismiss are GRANTED. The Clerk of Court is directed to close the motions at docket numbers 218, 233, 236, and 249, and to close this case.

SO ORDERED.

Dated: June 22, 2015
     New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY